

**FILED**

JUN 24 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHRYN FREEMAN, M.D.,　　　　:
　　　　　　　　　　　　　　　　:
　　　　*Plaintiff*　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　:　CIVIL ACTION NO._____
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
THE CHILDREN'S HOSPITAL　　　　:
OF PHILADELPHIA,　　　　　　　 :　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　:
　　　　*Defendant.*　　　　　　 :

`10   3059`

## VERIFIED COMPLAINT

### I.   PARTIES:

1.　Plaintiff, Kathryn Freeman, M.D., hereinafter referred to as "Dr. Freeman," is an individual and citizen of the Commonwealth of Pennsylvania and resides therein at 331 N. 34th Street, Apartment 1, Philadelphia, Pennsylvania 19104.

2.　Defendant, The Children's Hospital of Philadelphia, hereinafter referred to as "CHOP," is a non-profit corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and at all times material herein has maintained its place of business at 1 Children's Center, 34th Street and Civic Center Boulevard, Philadelphia, Pennsylvania 19104.

### II.   JURISDICTION AND VENUE:

3.　Dr. Freeman incorporates by reference paragraphs 1 through 2 of this Complaint as if fully set forth at length herein.

-1-



4.      The original jurisdiction of this Court is invoked, and venue is in this district, pursuant to Title 28 U.S.C. §§1331 and 1391, as the claims are substantively based on the ADA.

5.      All jurisdictional prerequisites to the filing of this Complaint have been fulfilled. Dr. Freeman filed a formal Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 23, 2010.  A true and correct copy of said time-stamped Charge has been attached hereto and marked "Exhibit A."

III.   **UNDERLYING FACTS:**

6.      Dr. Freeman incorporates by reference paragraphs 1 through 5 of this Complaint as if fully set forth at length herein.

7.      Dr. Freeman has been employed as an Intern in the General Pediatric Department of CHOP from on or about June 20, 2009 until the present.  Her employment with CHOP will be terminated on June 30, 2010.

8.      Dr. Freeman suffers from Depression, with which she was diagnosed in or about March of 2007. Depression is disability within the meaning of the ADA in that it substantially impairs one (1) or more of Dr. Freeman's major life activities, including, but not limited to, sleeping.  At all times relevant hereto, Dr. Freeman's disability (Depression) in no way interfered with her ability to perform the essential functions of her job with or without reasonable accommodation.

9.      As a child, Dr. Freeman was the victim of ongoing sexual abuse at the hands of the son of a family friend.  Dr. Freeman disclosed the aforesaid abuse in or about February of 2007 during her Obstetrics/Gynecology rotation in medical school.

10.     At or about the time of Dr. Freeman's disclosure of the sexual abuse, she sought

-2-

psychological counseling and treatment. Upon the recommendation of Ken Meehan, LCSW, and Aurora Casta, M.D. ("Dr. Casta"), Dr. Freeman entered a treatment program associated with the Psychiatric Institute of Washington. Dr. Freeman remained in said program for ten (10) days. Finding the aforesaid treatment helpful, Dr. Freeman continued treatment with an outpatient therapist subsequent to her inpatient stay at The Psychiatric Institute of Washington.

11.     Subsequent thereto, Dr. Freeman went on to successfully complete medical school at the University of Pennsylvania in 2009.

12.     Thereafter, in or about June of 2009, Dr. Freeman began her internship at CHOP in Pediatrics.

13.     In or about September of 2009, Dr. Freeman developed symptoms of gastrointestinal disturbance, resulting in weight loss. Also in or about September of 2009, as a result of the Complainant's actual disability (Depression), she experienced fluctuation in mood and decreased sleep. In connection therewith, Dr. Freeman called out of work twice from in or about September of 2009 until in or about October of 2009.

14.     In or about October of 2009, James M. Callahan, M.D. ("Dr. Callahan"), Assistant Residency Program Director at CHOP, requested to meet with Dr. Freeman. During said meeting, Dr. Callahan informed Dr. Freeman that "people were worried about her." Upon information and belief, CHOP had been informed of Dr. Freeman's history of sexual abuse as a child. In connection therewith, Dr. Callahan requested that Dr. Freeman sign a general release of information making her medical and/or psychological records available to her supervisors at CHOP. Dr. Freeman declined to

-3-

sign the release in that it was too broad in its scope and the purpose of the release was unrestricted and undefined.

15.     Thereafter, on or about October 26, 2009, Patricia Hicks, M.D. ("Dr. Hicks"), Pediatric Residency Director at CHOP, requested to meet with Dr. Freeman. During said meeting, Dr. Hicks ordered Dr. Freeman to execute the said medical release or suffer termination of employment at CHOP. Dr. Freeman requested additional time to decide whether she would accede to CHOP's ultimatum.

16.     Dr. Hicks also insisted that Dr. Freeman immediately submit to psychiatric evaluation by Mahendra Bhati, M.D. ("Dr. Bhati"), a psychiatrist affiliated with the University of Pennsylvania, to determine whether Dr. Freeman posed a "safety risk" at CHOP. Dr. Freeman submitted to the said evaluation in order to stave off termination of her position of employment with CHOP.

17.     After a one hour evaluation, Dr. Bhati opined to CHOP that Dr. Freeman suffered from Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder. The aforesaid mental conditions are disabilities within the meaning of the ADA in that they substantially impair one (1) or more major life activities.

18.     The diagnosis rendered by Dr. Bhati was unsupported by any medical evidence and had no foundation in fact. As a result of Dr. Bhati's flawed perception that Dr. Freeman had one (1) or more of the aforementioned disabilities, CHOP ordered Dr. Freeman to take a mandatory leave of absence from her employment at CHOP.

19.     Shortly thereafter, Dr. Freeman indepndently consulted with Robert Tucker, M.D. ("Dr. Tucker"), a psychiatrist. Dr. Tucker evaluated Dr. Freeman and determined that Dr.

-4-

Freeman could return to work without any restrictions. Dr. Tucker diagnosed Dr. Freeman as suffering from Depression and prescribed a treatment plan. Dr. Freeman informed CHOP of Dr. Tucker's findings and requested that she be permitted to return to work at CHOP.

20.    Notwithstanding the fact that Dr. Freeman had been medically cleared to return to work by Dr. Tucker, Drs. Hicks and Master disregarded Dr. Tucker's findings and instead chose to rely on the erroneous perceptions of Dr. Bhati. Drs. Hicks and Master insisted that Dr. Freeman submit to yet another evaluation, this time by the Pennsylvania Physician's Health Program ("PHP"). CHOP instructed Dr. Freeman to contact John Martiynuk, M.D., Ph.D. ("Dr. Martiynuk") and Greg Gable, Psy.D. ("Dr. Gable") to coordinate the evaluation.

21.    Drs. Hicks and Master directed Dr. Freeman not to return to work until PHP and CHOP determined Dr. Freeman could "safely perform" her job duties. Pursuant to the directive, Dr. Freeman promptly contacted Dr. Martiynuk.

22.    Thereafter, Dr. Martiynuk, via telephone, ordered Dr. Freeman to submit to an inpatient evaluation at the Menninger Clinic, a residential psychiatric treatment facility located in Houston, Texas.

23.    Subsequent to receiving Dr. Martiynuk's directive, Dr. Freeman consulted with Barbara Ziv, M.D. ("Dr. Ziv"), a board-certified psychiatrist. Dr. Ziv ruled out the diagnoses made by Dr. Bhati, cleared Dr. Freeman to return to work, and expressed that Dr. Martiynuk's referral to the Menninger Clinic was medically unwarranted and inappropriate given the sexual abuse aspect of Dr. Freeman's Depression.

24.    Dr. Freeman informed CHOP of Dr. Ziv's findings and requested that she be evaluated by various alternate outpatient facilities that were better suited to treat individuals who

had been victims of sexual abuse and resultant Depression. CHOP refused to grant Dr.

Freeman's requested accommodation and insisted that she commit herself to inpatient treatment

at the Menninger Clinic. CHOP refused to engage in any interactive process with Dr. Freeman

relative to said treatment.

25.     Notwithstanding CHOP's refusal to consider Dr. Freeman's request for

accommodation, rather than be terminated from her position of employment at CHOP, Dr.

Freeman traveled to Houston, Texas and involuntarily submitted to evaluation by the Menninger

Clinic from on or about December 13, 2009 until on or about December 18, 2009. Dr. Freeman

was evaluated by Donna Yi, M.D. ("Dr. Yi"), David Ness, M.D. ("Dr. Ness"), and Major

Bradshaw, Ph.D. ("Dr. Bradshaw") at the Menninger Clinic.

26.     Thereafter, Drs. Yi and Ness diagnosed Dr. Freeman with Depressive Disorder,

NOS, and Post-Traumatic Stress Disorder. The aforesaid medical and/or mental conditions are

disabilities within the meaning of the ADA in that they substantially impair one (1) or more

major life activities.

27.     Drs. Yi and Ness also recommended that Dr. Freeman submit to inpatient, long-

term psychiatric treatment for approximately 8-10 weeks at the Menninger Clinic. Curiously, Dr.

Bradshaw concluded that Dr. Freeman was cognitively intact, but his opinion was disregarded.

28.     On or about January 29, 2010, Richard Donze, D.O., M.P.H. ("Dr. Donze"),

Medical Director, Occupational Health Department at CHOP, Mary Cooney, R.N. ("Cooney"),

Nurse Manager, Occupational Health Department at CHOP, and Dr. Hicks informed Dr. Freeman

of the report submitted by Drs. Yi and Ness of the Menninger Clinic, and that Drs. Martiynuk

and Gable of the PHP recommended that Dr. Freeman return to the Menninger Clinic for long-

-6-

term inpatient treatment.

29.     Further, based on Dr. Freeman's actual disability (Depression) and/or perceived disabilities, the Defendant ordered Dr. Freeman, as a condition to returning to work, to submit to the aforesaid inpatient treatment in order to complete her PGY1 year of employment with CHOP or suffer termination of her employment at CHOP.

30.     Thereafter, Dr. Freeman again consulted with Dr. Ziv and as a result refused to submit to said long-term inpatient psychiatric treatment in that it was not medically necessary, and because it was based on the erroneous perception that Dr. Freeman suffered from certain psychological disorders which were not supported by medical evidence. Further, the inpatient treatment would have had a deleterious effect on her psychological well-being. Additionally, as stated previously, the Menninger Clinic does not offer treatment for victims of sexual abuse. Rather, the Menninger Clinic specializes in the treatment of drug and alcohol addiction, a condition from which Dr. Freeman does not suffer.

31.     As a result of Dr. Freeman's refusal to submit to said long-term inpatient psychiatric treatment, on or about February 2, 2010, Alan R. Cohen, M.D. ("Dr. Cohen"), Professor and Chair, Department of Pediatrics, notified Dr. Freeman that CHOP would not renew Dr. Freeman's contract of employment for the July 1, 2010-June 20, 2011 PGY2 year, and that her employment would be terminated effective June 30, 2010.

32.     Thereafter on February 15, 2010, Dr. Freeman invoked CHOP's internal grievance protocol and challenged the discriminatory decisions made by CHOP: (1) the decision to prohibit Dr. Freeman from completing her PGY1 year, (2) the decision to prevent her from restarting her PGY1 year in the Summer of 2010, and (3) the decision to refuse to renew her contract for the

-7-

July 1, 2010-June 20, 2011 academic year.  Dr. Freeman requested that she be permitted to return to work or be permitted to submit to alternative outpatient treatment.

33.     On or about February 21, 2010, Dr. Freeman requested the reasonable accommodation of outpatient treatment in connection with her actual disability (Depression). The request was supported by a written reccomendeation of Dr. Ziv.

34.     The request was denied and on or about March 3, 2010, CHOP held a hearing on Dr. Freeman's internal complaint.

35.     On or about March 10, 2010, CHOP informed Dr. Freeman her appeal was denied and concluded that, based on the Menninger Clinic's report, she posed a threat to patient safety and her employment would be terminated effective June 30, 2010.

36.     Said decision was motivated by CHOP's erroneous perception that Dr. Freeman suffered from Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder and because she refused to accede to CHOP'S directive that she submit to inpatient treatment at the Menninger Clinic.

37.     Dr. Freeman believes and avers that CHOP's decision to terminate her employment was based solely on her actual and/or perceived disabilities.  Dr. Freeman further believes and avers that CHOP failed to accommodate her and failed to engage in any interactive process as required by the ADA.

38.     As a result of CHOP's unlawful actions, Dr. Freeman will forever be precluded from the practice of medicine, particularly in the field of pediatrics.

39.     Without fulfilling her PGY1 year with CHOP, Dr. Freeman will be precluded from practicing medicine based on an unfounded perception that her removal was precipitated by

-8-

a determination by CHOP that she suffers from a psychological disability and that she poses a

thraet to patient safety. In fact, Dr. Freeman will be obliged to inform all prospective employers

as to the articulated reason for her termination.

40.     Therefore, as a result of CHOP's actions, Dr. Freeman's ability to practice

medicine will be forever and irreparably harmed and destroyed.

41.     As a proximate result of CHOP's actions, Dr. Freeman sustained harm which

cannot be fully compensated in money damages.

## COUNT I
### Actual and Perceived Disability Discrimination, Failure to Accommodate, Failure to Engage in the Interactive Process
### 42 U.S.C. §12101, et seq.

42.     Dr. Freeman incorporates by reference paragraphs 1 through 41 of this Complaint

as if fully set forth at length herein.

43.     The actions of CHOP, through its agents, servants, and employees, in (1)

subjecting Dr. Freeman to discrimination because of her perceived disabilities (Post-Traumatic

Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline

Personality Disorder); (2) subjecting Dr. Freeman to discrimination based on her actual disability

(Depression); (3) failing to provide Dr. Freeman with reasonable accommodation with regard to

her actual disability (Depression); (4) failing to engage in the interactive process with Dr.

Freeman to find reasonable accommodation for her actual disability (Depression); and (5)

determining that she posed a threath to patient safety at CHOP resulting in the termination of her

employment effective June 30, 2010, constituted a violation of the ADA, 42 U.S.C. §12101, et

seq.

-9-

44.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by CHOP in violation of the ADA, the Plaintiff has suffered permanent and irreparable harm causing her to sustain emotional distress, humiliation, embarrassment, loss of self-esteem, a loss of earnings, plus loss of future earning power, plus loss of back pay and front pay and interest due thereon.

**WHEREFORE,** Plaintiff, Kathryn Freeman, M.D., demands judgment against the Defendant as follows:

1.      For an order temporarily, preliminarily and permanently enjoining and restraining CHOP from terminating Dr. Freeman's employment;

2.      For an order temporarily, preliminarily and permanently enjoining CHOP from precluding Dr. Freeman from completing her PGY1 year;

3.      For an order temporarily, preliminarily, and permanently enjoining and restraining CHOP from requiring Dr. Freeman to submit to inpatient treatment at the Menninger Clinic as a prerequisite to her continued employment with CHOP;

4.      For an order declaring CHOP discriminated against Dr. Freeman on the basis of its perception of her as suffering from mental disabilities including, but not limited to, Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder;

5.      For an order declaring that CHOP discriminated against Dr. Freeman on the basis of her actual disability (Depression);

6.      For an order declaring that CHOP failed to accommodate Dr. Freeman's actual disability (Depression);

-10-

7.     For an order declaring that CHOP failed to engage in any interactive process with Dr. Freeman with regard to her actual disability (Depression);

8.     For an order precluding CHOP from informing any prosepective employer that Dr. Freeman suffers from a psychological disability or posed a threat to patient safety;

9.     For actual, compensatory, consequential, statutory, and punitive damages;

10.     For court costs, interest, and attorneys fees; and for such other and further relief as this Court deems just and proper.

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

By: /s/Sidney L. Gold, Esquire 1387
SIDNEY L. GOLD, ESQUIRE
I.D. NO.: 21374
BRETT A. CONDON, ESQUIRE
I.D. NO.: 307867
1835 Market Street
Philadelphia, PA  19103
(215) 569-1999
Attorneys for Plaintiff

DATED:     June 24, 2010

## VERIFICATION OF PLAINTIFF

I, Kathryn Freeman, M.D., swear that the facts set forth in the foregoing Verified Complaint

are true and correct to the best of my knowledge, information, and belief.


Dated: 6/23/10 _____                    _____ MD
                                                            Kathryn Freeman, M.D.



## NOTARIZATION

Sworn to and subscribed to before me

this 23 ~~day of May, 2003.~~
         day of June, 2010

_____ (Seal)

Notary Public

License Expires: November 8, 2011 _____


```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
Christine M. Pashley, Notary Public
City of Philadelphia, Philadelphia County
My commission expires November 08, 2011
```


-12-

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| [ ] FEPA | |
| [X] EEOC | |

and EEOC

ACKNOWLEDGMENT COPY

Pennsylvania Human Relations Commission

*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dr. Kathryn Freeman | 484.680.9972 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 331 North 34th Street, Apartment 1 | Philadelphia, Pennsylvania 19104 | 03/03/1983 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Childrens Hospital of Philadelphia | 500+ | 215.590.1000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 34th Street and Civic Center Boulevard | Philadelphia, Pennsylvania 19104 | Philadelphia |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE
[ ] RETALIATION  [ ] NATIONAL ORIGIN  [XXX] DISABILITY  [ ] OTHER (Specify) Depression

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)    LA TEST (ALL)

10/26/2009

[XXX] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

### SEE STATEMENT OF PARTICULARS ATTACHED HERETO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 6/23/10    *Katie Freeman MD* | *Katie Freeman, MD* |
| Date    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 6/23/10 |

PLAINTIFF'S EXHIBIT

A

ALL-STATE LEGAL®

**EEOC STATEMENT OF PARTICULARS:**

**In re: Kathryn Freeman, M.D. v. The Children's Hospital of Philadelphia**

The Complainant alleges that prior to and continuing through the present, the Respondent, through its agents, servants, and employees, subjected the Complainant to discrimination based on her actual disability (Depression) and/or perceived disabilities (Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder). The Complainant further alleges that the Respondent failed to provide her with reasonable accommodation for her actual disability (Depression) and failed to engage in the interactive process with the Complainant, ultimately resulting in the termination of her employment, effective on or about June 30, 2010. The facts in support of these allegations are as follows:

(a)     The Complainant has been employed by the Respondent from on or about June 20, 2009 until the present. Her employment with the Respondent will unlawfully cease on or about June 30, 2010.

(b)     The Complainant holds the position of Intern, General Pediatrics, with the Respondent and at all times has maintained an exemplary job performance rating in that capacity. The Complainant's job performance evaluations describe the Complainant as, *inter alia*, "a wonderful clinician," "[p]erforms at a superlative level," "outstanding among CHOP residents," and "the strongest intern on our team."

(c)     The Complainant suffers from Depression. She was diagnosed with said condition in or about March of 2007. Said medical condition is disability within the meaning of the Americans with Disabilities Act ("ADA") in that it substantially impairs one (1) or more of the Complainant's major life activities, including, but not limited to, sleeping.

-1-

(d)     At all times relevant hereto, the Complainant's disability, Depression, in no
        way interfered with her ability to perform the essential functions of her job
        with or without reasonable accommodation.

(e)     As a child, the Complainant suffered ongoing sexual abuse at the hands of
        the son of a family friend. The Complainant did not disclose the aforesaid
        abuse on in or about February of 2007 during her Obstetrics/Gynecology
        rotation in medical school.

(f)     At or about the time of the Complainant's disclosure of her abuse, she
        sought counseling in connection therewith. Upon the recommendation of
        Ken Meehan, LCSW, and Aurora Casta, M.D. ("Dr. Casta"), the
        Complainant entered a program that was associated with the Psychiatric
        Institute of Washington. The Complainant remained in said program for ten
        (10) days.

(g)     Finding the aforesaid treatment helpful, the Complainant continued
        treatment for her disability with an outpatient therapist subsequent to her
        inpatient stay at The Psychiatric Institute of Washington.

(h)     Subsequent thereto, the Complainant went on to complete medical school at
        the University of Pennsylvania and its associated requirements with flying
        colors.

(i)     In or about June of 2009, the Complainant commenced her employment in
        the Respondent's Pediatrics department.

(j)     In or about September of 2009, the Complainant developed symptoms of
        gastrointestinal disturbance, resulting in weight loss. Also in or about
        September of 2009, as a result of the Complainant's actual disability
        (Depression), she experienced fluctuation in mood and decreased sleep.

(k)     In connection therewith, the Complainant called out of work twice from in
        or about September of 2009 until in or about October of 2009.

(l)     In or about October of 2009, James M. Callahan, M.D. ("Dr. Callahan"),
        Assistant Residency Program Director, requested to meet with the
        Complainant. During said meeting, Dr. Callahan informed the Complainant
        that people were "worried" about her. Upon information and belief, the
        Respondent had been re-informed of the Complainant's history of sexual

-2-

abuse as a child.  In connection therewith, Dr. Callahan requested that the Complainant sign a release of information making her medical and/or psychological records available to her supervisors.  The Complainant declined to sign the aforesaid release.

(m)     Thereafter, on or about October 26, 2009, Patricia Hicks, M.D. ("Dr. Hicks"), Pediatric Residency Director, requested to meet with the Complainant.  During said meeting, Dr. Hicks stated that the Complainant was required to sign a medical release of information or her employment with the Respondent would be terminated.  The Complainant requested additional time to consider whether she would sign a release.

(n)     As a result thereof, Dr. Hicks directed the Complainant immediately submit to evaluation by Mahendra Bhati, M.D. ("Dr. Bhati"), a psychiatrist at the University of Pennsylvania, to determine whether the Complainant was "safe" to continue work as a pediatrician.

(o)     Subsequent thereto, Dr. Bhati communicated to the Respondent that he considered the Complainant to have Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder.  The aforesaid medical and/or mental conditions are disabilities within the meaning of the ADA in that they substantially impair one or more major life activities.

(p)     Despite the fact that Dr. Bhati evaluated the Complainant for a mere one (1) hour period, the Respondent, based on its erroneous perception that Complainant had one (1) or more of the aforementioned disabilities and/or the Complainant actually had Depression, instructed the Complainant to take a mandatory leave of absence from work.

(q)     Shortly thereafter, the Complainant consulted Robert Tucker, M.D. ("Dr. Tucker"), another psychiatrist.  Dr. Tucker medically cleared the Complainant to return to work and prescribed her Prozac as treatment for her disability (Depression).  The Complainant informed the Respondent of her clearance to return to work.

(r)     On or about November 2, 2009, the Complainant met with Drs. Hicks and Master.  Despite the Complainant's medical clearance to return to work, Drs. Hicks and Master, based on said erroneous perception of the Complainant as having one (1) or more of the aforementioned disabilities

-3-

and/or the Complainant actually having Depression, insisted that the Complainant submit to yet another evaluation, this time by the Pennsylvania Physician's Health Program ("Pennsylvania PHP"). They instructed her to contact John Martiynuk, M.D., Ph.D. ("Dr. Martiynuk") and Greg Gable, Psy.D. ("Dr. Gable") to coordinate the same.

(s)   In connection therewith, Drs. Hicks and Master barred the Complainant from returning to work until, and only if, the Pennsylvania PHP and the Respondent determined the Complainant could "safely perform" her job duties.

(t)   Pursuant to the directive, the Complainant promptly contacted Dr. Martiynuk. Without meeting with the Complainant, Dr. Martiynuk, over the telephone, told the Complainant that she needed to be evaluated by the Menninger Clinic, a private, for-profit residential treatment facility, in Houston, Texas.

(u)   Subsequent to receiving Dr. Martiynuk's referral, the Complainant consulted with Barbara Ziv, M.D. ("Dr. Ziv"), an independent psychiatrist. Dr. Ziv ruled out the diagnoses made by Dr. Bhati, cleared the Complainant to return to work, and expressed that Dr. Martiynuk's referral was medically unnecessary and without any basis.

(v)   The Complainant informed the Respondent of Dr. Ziv's findings and requested that she be evaluated by various alternate facilities that were better suited to treat her Depression and were closer in geographic proximity as reasonable accommodation for her actual disability (Depression).

(w)   The Respondent failed to grant Dr. Freeman's request and insisted that she submit herself to the Menninger Clinic, thereby failing to engage in any interactive process with the Complainant.

(x)   Notwithstanding the Respondent's refusal to accommodate the Complainant, rather than be terminated from her position of employment, the Complainant involuntarily submitted to evaluation by the Menninger Clinic from on or about December 13, 2009, until on or about December 18, 2009. Plaintiff Freeman was evaluated by Donna Yi, M.D. ("Dr. Yi"), David Ness, M.D. ("Dr. Ness"), and Major Bradshaw, Ph.D. ("Dr. Bradshaw").

-4-

(y)     In connection therewith, Drs. Yi and Ness diagnosed the Complainant with Depressive Disorder, NOS, and Post-Traumatic Stress Disorder. The aforesaid medical and/or mental conditions are disabilities within the meaning of the ADA in that they substantially impair one or more major life activities.

(z)     As a result thereof, Drs. Yi and Ness recommended that the Complainant submit to long-term inpatient psychiatric treatment at the Menninger Clinic. Curiously, Dr. Bradshaw stated that the Complainant was cognitively intact, but this was ignored in the recommendation of Drs. Yi and Ness.

(aa)    On or about January 29, 2010, Richard Donze, D.O., M.P.H. ("Dr. Donze"), Medical Director, Occupational Health Department, Mary Cooney, R.N. ("Cooney"), Nurse Manager, Occupational Health Department, and Dr. Hicks informed the Complainant the report submitted by Drs. Yi and Ness of the Menninger Clinic, and Drs. Martiynuk and Gable of the Pennsylvania PHP, recommended the Complainant return to the Menninger Clinic for long-term inpatient treatment.

(bb)    Further, based on the Complainant's actual disability (Depression) and/or perceived disabilities, the Respondent ordered the Complainant, as a condition to returning to work, to submit to the aforesaid inpatient treatment in order to complete her PGY1 year of employment with the Respondent.

(cc)    The Complainant refused to submit to said psychiatric treatment in that it was not medically necessary and would have had a deleterious effect on her psychological well-being. Additionally, the Menninger Clinic does not treat victims of sexual abuse. Rather, the Menninger Clinic specializes in the treatment of drug and alcohol addition, a condition from which the Complainant does not suffer.

(dd)    As a result of the Complainant's complaint, on or about February 2, 2010 Alan R. Cohen, M.D. ("Dr. Cohen"), Professor and Chair, Department of Pediatrics, informed the Complainant that the Respondent would not renew Complainant's contract of employment for the July 1, 2010-June 20, 2011 PGY2 year, thereby terminating Complainant's employment effective June 30, 2010.

-5-

(ee)   On or about February 15, 2010, the Complainant appealed the following discriminatory decisions made by the Respondent: (1) the decision to prohibit the Complainant from completing her PGY1 year, (2) the decision to prevent her from restarting her PGY1 year in the Summer of 2010, and (3) the decision to refuse to renew her contract for the July 1, 2010-June 20, 2011 academic year.

(ff)   On or about February 21, 2010, the Complainant, by and through an independent report submitted by Dr. Ziv, requested the reasonable accommodation of outpatient treatment in connection with her actual disability (Depression). Dr. Ziv also noted the Menninger Clinic's conflict of interest in recommending the Complainant for inpatient treatment at its for-profit facility.

(gg)   On or about March 3, 2010, the Respondent held a hearing regarding the Complainant's aforesaid appeal.

(hh)   On or about March 10, 2010, the Respondent informed the Complainant that it denied her appeal and affirmed that her employment will be terminated effective June 30, 2010. Said decision was motivated by the Respondent's erroneous perception that the Complainant suffered from Post-Traumatic Stress Disorder, Eating Disorder NOS, and Cluster B personality traits such as Borderline Personality Disorder and motivated by her actual disability (Depression). Said decision constituted a failure to accommodate the Complainant and a failure to engage in any interactive process whatsoever.

(ii)   The Complainant believes and avers that the Respondent's decision to terminate her employment was based solely on her actual and/or perceived disabilities. The Complainant further believes and avers that the Respondent failed to accommodate her and failed to engage in any interactive process.

**WHEREFORE**, the Complainant believes and therefore avers that the actions of the Respondent were discriminatory in nature, in violation of the Americans with Disabilities Act.

-6-